# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**ALLINA HEALTH SYSTEM**,

    Plaintiff,

v.

**KATHLEEN SEBELIUS**, **Secretary**,
   United States Department of Health
   and Human Services,

    Defendant.

Civil Action No. 09-cv-1889 (RLW)

## MEMORANDUM OPINION

Plaintiff Allina Health System ("Allina") brings this suit to challenge, under the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.*, a Medicare reimbursement decision of the Secretary of Health and Human Services. Broadly speaking, Allina contends that the Secretary improperly calculated the disproportionate share hospital adjustments for five Allina-owned hospitals, during fiscal years ranging from 1993 through 2003. More specifically, this case turns on the parties' rival interpretations of a single phrase as used in the applicable adjustment formula: "entitled to benefits under [Medicare] Part A." 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II). The parties have cross moved for summary judgment, and those motions are presently pending before the Court. (Dkt. Nos. 6, 17). Disagreeing that the interpretation pressed by Allina is compelled by the plain language of the statute, and otherwise finding the Secretary's interpretation permissible and reasonable, the Court concludes that Allina's attacks against the Secretary's decision are without merit.

Accordingly, upon careful consideration of the parties' briefing, the Administrative Record, and the governing authorities, the Court concludes, for the reasons that follow, that Allina's Motion for Summary Judgment will be **DENIED** and that the Secretary's Cross-Motion for Summary Judgment will be **GRANTED**.

## BACKGROUND

### A. Statutory and Regulatory Framework

Few regulatory regimes rival the complexity of the federal Medicare statute. Fortunately, the narrow question presented in this case does not require the Court to venture too far down the statute's labyrinthine paths.[1]

At a general level, "[t]he federal Medicare program provides health insurance for the elderly and disabled and reimburses qualifying hospitals for services provided to eligible patients." *Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 915-16 (D.C. Cir. 2013). The Medicare statute itself is divided into five "Parts," two of which are implicated here. "Part A covers medical services furnished by hospitals and other institutional providers." *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 2 (D.C. Cir. 2011) (citing 42 U.S.C. §§ 1395c–1395i-5). Part E, also relevant to this dispute, sets forth "various 'Miscellaneous Provisions,' one of which is the Prospective Payment System ("PPS") for reimbursing Part A inpatient hospital services." *Id.* at 3 (citing 42 U.S.C. § 1395ww(d)). "Under the PPS, Medicare

---

[1] The Fourth Circuit has described the Medicare statute as "among the most completely impenetrable texts within human experience." *Rehab. Ass'n v. Kozlowski*, 42 F.3d 1444, 1450 (4th Cir. 1994). Other courts of appeal, including the District of Columbia Circuit, have echoed this assessment. *See Abraham Lincoln Mem. Hosp. v. Sebelius*, 698 F.3d 536, 540-41 (7th Cir. 2012); *In re Avandia Mktg.*, 685 F.3d 353, 365 (3d Cir. 2012); *Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 13 (D.C. Cir. 2011); *Alhambra Hosp. v. Thompson*, 259 F.3d 1071, 1076 (9th Cir. 2001). For a more literary-flavored spin, consider Judge Lamberth's recent characterization of the statute as akin to "a law written by James Joyce and edited by E.E. Cummings." *Catholic Health Initiatives Iowa, Corp. v. Sebelius*, 841 F. Supp. 2d 270, 271 (D.D.C. 2012), *rev'd*, 718 F.3d 914 (D.C. Cir. 2013).

reimburses a hospital for services based on prospectively determined national and regional rates rather than on the actual amount the hospital spends." *Id.* (citing 42 U.S.C. § 1395ww(d)). This prospective payment rubric also entails some adjustments based on hospital-specific factors, one of which is the "disproportionate share hospital" ("DSH") adjustment. *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). Through the DSH adjustment, the government pays more to hospitals that "serve[] a significantly disproportionate number of low-income patients," *id.*, "based on Congress's judgment that low-income patients are often in poorer health, and therefore costlier for hospitals to treat," *Catholic Health*, 718 F.3d at 916 (citing *Adena Reg'l Med. Ctr. v. Leavitt*, 527 F.3d 176, 177-78 (D.C. Cir. 2008)).

A hospital's potential DSH adjustment is based on its "disproportionate patient percentage" or "DPP," a formula that serves as a "'proxy measure' for the number of low-income patients a hospital serves." *Northeast Hosp.*, 657 F.3d at 3 (quoting H.R. REP. NO. 99-241, pt. 1, at 17 (1985)). The DPP is defined by statute as the sum of two fractions, commonly referred to as the "Medicare fraction" and the "Medicaid fraction." These fractions "represent two distinct and separate measures of low income—SSI (i.e., welfare) and Medicaid, respectively—that when summed together, provide a proxy for the total low-income patient percentage." *Catholic Health*, 718 F.3d at 916. The Medicare fraction is:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under [Medicare] Part A . . . and were entitled to supplementary security income [SSI] benefits . . . and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under [Medicare] Part A.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). And the Medicaid fraction is:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which consists of patients who (for such days) were eligible for medical assistance under a State [Medicaid] plan . . .

3

but who were not entitled to benefits under [Medicare] Part A . . . and the denominator of which is the total number of the hospital's patient days for such period.

*Id.* § 1395ww(d)(5)(F)(vi)(II). As our Court of Appeals recently observed, "[t]his language is downright byzantine." *Catholic Health*, 718 F.3d at 916. In an effort to simplify things somewhat, the Court provides a visual chart depicting these fractions:

|  | **Medicare fraction** | **Medicaid fraction** |
|---|---|---|
| **Numerator** | Patient days for patients "entitled to benefits under Part A" *and* "entitled to SSI benefits" | Patient days for patients "eligible for [Medicaid]" *but not* "entitled to benefits under Part A" |
| **Denominator** | Patient days for patients "entitled to benefits under Part A" | Total number of patient days |

*See id.* at 917. This case turns on the propriety of the Secretary's interpretation of the phrase "entitled to benefits under Part A," as used in the numerator of the *Medicaid* fraction.

For purposes of Medicare reimbursements, a "fiscal intermediary," generally a private insurance company acting on the Secretary's behalf, initially calculates a hospital's DSH adjustment. *See* 42 C.F.R. §§ 421.1, 421.3, 421.100-.128. If a hospital disputes the intermediary's calculations, it may then appeal the determination to the Provider Reimbursement Review Board ("PRRB"), an administrative tribunal appointed by the Secretary. *See* 42 U.S.C. § 1395oo(a), (h). From there, the Secretary is authorized to review a PRRB determination on her own motion, but she has delegated that authority to the Administrator of the Centers for Medicare and Medicaid Services ("CMS"). *Id.* § 1395oo(f). Finally, if a provider is dissatisfied with the final decision of the CMS Administrator, it may then seek judicial review by initiating a civil action in district court. *Id.*

4

**B. Factual and Procedural Background**

Allina owns and operates five Minnesota-based hospitals—United Hospital, Abbott Northwestern Hospital, Buffalo Hospital, Mercy Hospital, and Unity Hospital—all of which participate in the federal Medicare program. (*See* Dkt. No. 1 ("Compl.") at ¶ 9). This dispute centers around DSH adjustment amounts calculated for these hospitals for varying fiscal years ranging from 1993 to 2003. In particular, the parties dispute the role that so-called dual-eligible exhausted benefit days and Medicare secondary payer ("MSP") days serve in the Medicaid fraction of the DSH adjustment formula. The term "dual-eligible" refers to patients who are eligible to receive benefits under both Medicare Part A and a state Medicaid program, generally the elderly poor. *See McCreary v. Offner*, 172 F.3d 76, 78 (D.C. Cir. 1999). Dual-eligible exhausted days, in turn, are patient days for individuals who are eligible for both Medicare and Medicaid, but who have exhausted their Medicare benefits for the days at issue.[2] *See Catholic Health*, 718 F.3d at 917. MSP days are, roughly speaking, patient days for which a party other than Medicare—such as a state Medicaid program or an employer-sponsored health plan—has paid for patient services in full, and for which Medicare makes no payment by statute. *See* 42 U.S.C. § 1395y(b)(2).[3] The parties' dispute in this case is whether patients falling within these

---

[2]   Generally, Medicare Part A will cover only a limited number of successive days during a single period of hospitalization. Once a hospital stay extends beyond the allotted number of days, the patient's benefits under Medicare Part A are deemed "exhausted." Under current regulations, Medicare Part A covers 60 days as "full benefit days" (for which Medicare pays the hospital for all covered services, other than a deductible), along with an additional 30 days as "coinsurance days" (whereby Medicare pays for all covered services except for a daily coinsurance amount). 42 C.F.R. § 409.61(a)(1). A beneficiary's entitlement to these 90 benefit days is renewed each time he or she begins a benefit period. *Id.* § 409.61(c). As a further benefit, Medicare also provides 60 additional "lifetime reserve" days that a beneficiary may draw upon when "hospitalized for more than 90 days in a benefit period." *Id.* § 409.61(a)(2). But as the name implies, these lifetime reserve days are non-renewable.

[3]   MSP days can also include patient days for which a primary payer makes partial payment for services, but at an amount less than that allowable under Medicare. In those circumstances,

5

categories of patient days—dual-eligible exhausted days and MSP days—were "entitled to benefits under Part A," as used in the Medicaid fraction of the DPP formula.[4]

The Allina hospitals' fiscal intermediary, in originally calculating the applicable DSH adjustments for the periods at issue, determined that the contested days should be excluded from the numerator of the Medicaid fraction. In other words, the intermediary concluded that such patients did not fall into the category of individuals who were "not entitled to benefits under [Medicare] Part A." (*See* Administrative Record ("AR") at 24-25). The Hospitals then appealed the intermediary's determination to the PRRB, and the Board reversed, finding that the days in question should be counted in the Medicaid fraction. (AR at 21-30).[5] According to the PRRB, "[b]ecause there is no right to payment from Medicare once a patient has exhausted its benefits, or [when] services are covered/paid by a primary payor other than Medicare are non-covered, these days . . . would be included in [the] Medicaid fraction." (AR at 27). From there, the Acting Deputy Administrator of CMS opted to review the matter, ultimately reversing the PRRB's decision and upholding the intermediary's original determination. (AR at 2-11). That is, the Acting Deputy Administrator concluded that the contested days should be excluded from the Medicaid fraction of the DSH adjustment formula. Allina then sought review in this Court.

The matter is presently before the Court on Allina's Motion for Summary Judgment (Dkt. No. 6) and the Secretary's Cross-Motion for Summary Judgment (Dkt. No. 17).

---

Medicare may make an additional payment, but that payment amount, when combined with the original payment made by the primary payer, cannot exceed the total Medicare allowable amount for the services. 42 U.S.C. § 1395y(b)(4); *see also* 42 C.F.R. 411.33(e). The parties' dispute in this case, though, surrounds only those days for which Medicare made no payment whatsoever.

[4] For simplicity's sake, the Court will refer to these two categories of patient days as the "contested days" throughout the remainder of this Opinion.

[5] Though they never expressly say as much, the Hospitals presumably want to include the contested days in the Medicaid fraction because the inclusion of these additional days, "at least in some cases, . . . will result in a higher DPP, and therefore in greater payments to hospitals." *Catholic Health*, 718 F.3d at 917.

## ANALYSIS

### A. Legal Standard of Review

Under the Medicare Act, judicial review of the Secretary's reimbursement decisions is governed by the APA. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (citing 42 U.S.C. § 1395oo(f)(1)); *Tenet HealthSystems HealthCorp. v. Thompson*, 254 F.3d 238, 243-44 (D.C. Cir. 2001). In APA cases, as in all cases, summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Under the APA, then, the reviewing court must review the administrative record to determine whether there is "'a genuine dispute' as to some material fact" that would render the challenged agency decision "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Sherley v. Sebelius*, 689 F.3d 776, 780 (D.C. Cir. 2012) (quoting 5 U.S.C. § 706(2)). While the court must conduct a "searching and careful" review, the agency's action remains "entitled to a presumption of regularity," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-16 (1971), and the court "will not second guess an agency decision or question whether the decision made was the best one," *C & W Fish Co. v. Fox*, 931 F.2d 1556, 1565 (D.C. Cir. 1991). But the court must nevertheless be satisfied that the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1036 (D.C. Cir. 2012).

Additionally, where a case turns on an agency's interpretation of a statute it is charged with implementing, as here, courts must apply the two-part *Chevron* test. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron* Step One, the court must first determine "whether Congress has directly spoken to the precise question at issue." *Id.* at

842; *Pub. Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 154 (D.C. Cir. 1990). In answering this question, the court reviews the statute *de novo*, "employing traditional tools of statutory construction." *Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1228 (D.C. Cir. 2007); *see also Bell Atl. Tel. Co. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997) (characterizing the *Chevron* Step One inquiry "as a search for the plain meaning of the statute"). If the intent of Congress is clear, then the court's inquiry ends, and the clear and unambiguous statutory language controls. *See Northeast Hosp.*, 657 F.3d at 4 (citing *Chevron*, 467 U.S. at 842-43). If the statute is ambiguous, however, then the analysis shifts to *Chevron* Step Two, and the court must consider "whether the agency's [interpretation] is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843; *see also Peter Pan Bus Lines v. FMSCA*, 471 F.3d 1350, 1353 (D.C. Cir. 2006). Under *Chevron*, "[a] statute is ambiguous if it can be read more than one way." *AFL-CIO v. Fed. Election Comm'n*, 333 F.3d 168, 173 (D.C. Cir. 2003). "Because the judiciary functions as the final authority on issues of statutory construction, an agency is given no deference at all on the question whether a statute is ambiguous." *Wells Fargo Bank, N.A. v. Fed. Deposit Ins. Corp.*, 310 F.3d 202, 205-06 (D.C. Cir. 2002) (internal citations and quotation marks omitted).

### B. Entitled To Benefits Under Part A

Allina mounts two separate lines of attack in challenging the Secretary's reimbursement determination in this case. First, Allina argues that the Secretary's interpretation of the phrase "entitled to benefits under Part A" violates the plain language of the Medicare Act, and thus fails under *Chevron* Step One. Second, Allina asserts that even if the statute is ambiguous and does not plainly compel its proffered reading of the statute, the Secretary's interpretation is

8

unreasonable and otherwise merits no deference under *Chevron* Step Two. The Court takes these arguments in turn.

### 1. The Secretary's Interpretation Does Not Violate The Plain Language Of The Medicare Statute

Allina principally contends that the Secretary's exclusion of the contested days from the numerator of the Medicaid fraction contravenes the clear text of the Medicare Act. In so arguing, Allina stridently insists that the language "entitled to benefits under Part A" unambiguously refers only to those days for which patients were entitled to receive payment of Medicare Part A benefits. As Allina sees things, because Medicare did not make any payment on the contested days, the plain language of the Medicare statute requires that the contested days be included in the numerator of the DSH formula's Medicaid fraction. Unsurprisingly, the Secretary disagrees. According to the Secretary, the statutory language compels the opposite result: that the contested days must be excluded from the Medicaid fraction. In the Secretary's view, a patient's being "entitled" to Part A benefits turns on whether the patient meets the statutory criteria for Medicare benefits, irrespective of whether Medicare actually makes payment for the days at issue.

Both parties spill a great deal of ink on this line of argument, with each side maintaining that its statutory interpretation is not only superior, but required. With the benefit of a recent, intervening decision from the D.C. Circuit on this very issue, though, the Court need not tarry long at this first *Chevron* waypoint.

In *Catholic Health*, our Court of Appeals confronted the precise question now before this Court—"how to interpret the phrase 'entitled to benefits under part A' in the Medicaid fraction numerator [of the DSH adjustment formula]." *See Catholic Health*, 718 F.3d at 917. After

weighing many of the same contentions pressed by the parties here, the Circuit disagreed that the plain language of the statute compelled either interpretation:

> We think it unnecessary to parse all the other provisions of the statute the parties cite in support of their respective positions. We conclude that, although the Department's interpretation is the better one, it is not quite inevitable. Either interpretation seems permissible, a conclusion that is reinforced by our recent decision in *Northeast Hospital v. Sebelius*, 657 F.3d 1 (D.C. Cir. 2011) . . . . The basic arguments made by the parties in *Northeast Hospital* track those made here, and after a lengthy analysis, in which we noted "the Medicare statute's inconsistent and specialized use of the phrase 'entitled to benefits under Part A,'" *id.* at 13, we found the statute ambiguous on this question.

*Id.* at 920. Simply put, the D.C. Circuit's recent rulings in both *Catholic Health* and *Northeast Hospital* control the result here.[6] The statutory language does not unambiguously compel either side's interpretation, which means that no party emerges victorious at the *Chevron* Step One stage. So with the salient statutory language in hand, the Court forges ahead to *Chevron* Step Two and Allina's remaining APA-based arguments.

### 2. The Secretary's Interpretation Is Based On A Permissible Reading Of The Medicare Statute And Is Not Arbitrary Or Capricious

Allina argues that even if the Secretary's interpretation does not contravene the plain text of the Medicare statute, her construction is nevertheless impermissible under *Chevron* Step Two and otherwise arbitrary and capricious. On this front, Allina's theories have evolved somewhat over the course of briefing in this case, but its overall arguments can be distilled as follows. First, Allina contends that the Secretary's interpretation warrants no deference because it is inconsistent with her treatment of the same phrase used elsewhere in the Medicare statute. Second, Allina assails the Secretary's construction as inconsistently applied within the DSH

---

[6] The Sixth Circuit has found this same statutory provision ambiguous. *See Metro. Hosp. v. U.S. Dep't of Health & Human Servs.*, 712 F.3d 248, 255 (6th Cir. 2013) (weighing arguments akin to those presented in this case and concluding "that the statute's plain language does not unambiguously endorse either party's interpretation").

adjustment rubric itself. Through this argument, Allina complains about the "illogical" result that assertedly flows from the Secretary's decision, insofar as the contested days were excluded from both the Medicaid fraction and the Medicare fraction. Third, Allina argues that the Secretary's reading of the statute improperly equates the terms "eligible" and "entitled," relying on a string of decisions from various courts of appeals outside of the District of Columbia Circuit. And fourth, Allina argues that the Secretary's interpretation amounts to impermissible retroactive rulemaking in violation of the APA. The Court addresses each of these arguments in turn, finding none persuasive.

As a threshold matter, it bears emphasis that the D.C. Circuit has previously described the Secretary's proffered interpretation—that the phrase "entitled to benefits under Part A" looks to a whether a patient satisfies the statutory criteria for Medicare benefits, as opposed to whether payment was made for the patient's services on a particular day—as a "permissible" interpretation for *Chevron* purposes. *Catholic Health*, 718 F.3d at 920. In turn, our Court of Appeals "defer[red] to the Department's construction" in *Catholic Health*, concluding that, as between competing statutory readings nearly identical to those pressed by Allina and the Secretary here, "the Department's interpretation [was] the better one." *Id.* This could well be the end of the matter. But since the Court of Appeals did not devote much attention to the second phase of the *Chevron* analysis in *Catholic Health*—perhaps due to the appellant's "somewhat weak[]" presentation on the issue in that case, *id.*—this Court will proceed to explain why Allina's arguments do not compel a contrary result here. Given our Circuit's statements in *Catholic Health*, however, the Court at least begins from the proposition that the Secretary's interpretation is presumptively permissible under *Chevron* Step Two.

11

*First*, Allina contends that the Secretary's interpretation is unreasonable because it conflicts with her construction of the same language in other provisions of the Medicare statute. In particular, Allina focuses on the Secretary's previous interpretation of the phrase "entitled to benefits under part A" as used in the definition of "[M]edicare-dependent, small rural hospital" that appears elsewhere in Section 1395ww. *See* 42 U.S.C. § 1395ww(d)(5)(G)(iv); *Changes to the Hospital Inpatient PPS and FY 1991 Rates*, 55 Fed. Reg. 35,990, 35,996 (Sept. 4, 1990) ("[42 U.S.C. § 1395ww(d)(5)(G)(iv)] states that Medicare dependency is limited to consideration of those inpatients entitled to part A benefits. Since patients who have exhausted their part A benefits are no longer entitled to payment under part A, we do not believe such stays should be counted."). Allina seizes upon this apparent inconsistency, arguing that at a minimum, the Secretary was required to offer a rational explanation for the disparity. However, Allina never raised this argument during any of the administrative proceedings—whether before the PRRB or the CMS Administrator. (*See* AR 15, 672-687). Under long-settled precedent, then, this argument is waived, and the Court need not consider it. *See ExxonMobil Oil Corp. v. FERC*, 487 F.3d 945, 962 (D.C. Cir. 2007) ("A party must first raise an issue with an agency before seeking judicial review."); *Nuclear Energy Inst. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004) ("It is a hard and fast rule of administrative law, rooted in simple fairness, that issues not raised before an agency are waived and will not be considered by a court on review."); *Grossmont Hosp. Corp. v. Sebelius*, 903 F. Supp. 2d 39, 48-49 (D.D.C. 2012) (refusing to hear arguments not raised with the PRRB or CMS Administrator).

*Second*, and somewhat relatedly, Allina attacks as unreasonable the Secretary's varying interpretations of the "entitled to benefits" phrase within the two fractions of the DSH adjustment formula. Allina complains that as a result of the Secretary's determination, the patient days at

issue were not only excluded from the numerator of the Medicaid fraction, but also from the Medicare fraction. As Allina sees things, "because the two numerators of the fractions are defined as the inverse of each other," (Dkt. No. 6 ("Pl.'s Mem.") at 12), this means that the contested days must be included somewhere in the DSH adjustment formula. Since the Secretary's decision failed to account for these days altogether—i.e., they were completely excluded from the DSH calculation—Allina decries the Secretary's position as "illogical" and irrational. At first blush, this argument has some appeal to it. As Allina rightly points out, during the time period at issue, the Secretary interpreted the phrase "entitled to benefits under Part A" as used in the *Medicare* fraction to encompass only *covered* patient days; it was not until a 2004 rulemaking that the Secretary adopted an interpretation of the phrase as used in the *Medicare* fraction "to include the days associated with dual-eligible beneficiaries . . . , whether or not the beneficiary has exhausted Medicare Part A hospital coverage." *Medicare Program; Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2005 Rates*, 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004). But this revised interpretation suggests, if anything, a somewhat knotty interpretative question as to the Secretary's construction of the DSH formula's *Medicare* fraction, not the *Medicaid* fraction, as is at issue here.[7]

In pressing this line of reasoning, Allina is essentially advancing the alternative claim that the Secretary wrongly construed the *Medicare* fraction of the DSH formula. That is, Allina asserts that even if the Secretary properly excluded the contested days from the *Medicaid* fraction, at a minimum, the Secretary should have counted the days in the *Medicare* fraction. (*See* Dkt. No. 35 ("Pl.'s Supp. Brief") at 6-10). But this has never been the scope of Allina's

---

[7] To be clear, the Court expresses no opinion as to the propriety of the Secretary's interpretation of the phrase "entitled to benefits under Part A" as used in the *Medicare* fraction. That question is not before the Court.

challenge. Rather, the relief Allina has consistently sought—before the PRRB, before the CMS Administrator, and before this Court—is much narrower: a determination that the contested days be included in the numerator of the *Medicaid* fraction.[8] And as already explained, the Court will not consider theories that were never presented to the agency at the administrative level. *Nuclear Energy Inst.*, 373 F.3d at 1297; *Grossmont Hosp.*, 903 F. Supp. 2d at 48-49. Allina cannot so substantially repackage its theories at this late stage in the game.

Otherwise, in focusing on the scope of the claim Allina does legitimately advance, the Court remains unconvinced that the Secretary's interpretation of the *Medicare* fraction renders her reading of the separately-defined *Medicaid* fraction unreasonable. First, as the Supreme Court has observed, varying interpretations, even within the same statute, do not irrefutably render an agency construction unreasonable. *See Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) ("A given term in the same statute may take on distinct characters from association with distinct statutory objects calling for different implementation strategies."). While the two fractions certainly work together to comprise the DSH proxy, our Circuit has also explained that these components "represent two *distinct and separate measures of low income*." *Catholic Health*, 718 F.3d at 916 (emphasis added). Given these distinct objectives, and mindful of the nuance and "tremendous complexity of the Medicare statute," *Methodist Hosp. v. Shalala*, 38 F.3d 1225, 1229 (D.C. Cir. 1994), the Court is wary of placing too much weight on

---

[8] Allina's focus on the Medicaid fraction has been evident since the outset of this dispute. This was Allina's theory before the PRRB, (*see* AR at 674) ("[T]he Providers respectfully request that the Board order the Intermediary to revise the DSH calculation for each of the Providers *to include dual eligible days in the numerator of the Medicaid fraction*") (emphasis added); before the CMS Administrator, (*see* AR 15) (incorporating the Providers' post-hearing brief to the PRRB for purposes of the CMS Administrator's review); and before this Court (*see* Dkt. No. 1 ("Compl.") at ¶ 43A) (praying that the Court "direct[] the Secretary to recalculate the Hospitals' Medicare DSH payments to include the days at issue *in the numerator of the Medicaid fractions*") (emphasis added); (*see also* Pl.'s Mem. at 19) (same).

parallelism. In addition, it bears emphasis that the DSH proxy is just that—a proxy, not an exact calculation. Thus, to the extent that some patient days were not captured by the Secretary's calculation of the hospitals' DSH adjustments, this does not necessarily render her interpretation impermissible or unreasonable. Finally, as already noted, the Secretary has since revised her construction of the applicable phrase in the Medicare fraction to bring that interpretation in line with the position Allina challenges in this case. *See* 69 Fed. Reg. at 49,099. Rather than establishing arbitrariness, as Allina seems to suggest, these changes are better seen as an indication that the Secretary's reading of the phrase in the Medicaid fraction—a reading that has remained unchanged—is the result of measured, reasoned analysis. *See Metro. Hosp.*, 712 F.3d at 269 (opining that such a "correction further demonstrates that the Secretary's interpretation of this statutory phrase [42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)] is the product of a reasoned analysis of its terms, not an ad hoc determination meant to unduly restrict DSH adjustments").

*Third,* though couched principally within its plain-language arguments at the *Chevron* Step One stage, Allina also appears to contend that the Secretary's interpretation is unreasonable because she improperly equates the terms "eligible" and "entitled" as used in the Medicaid fraction. To this end, Allina points out that the numerator of the Medicaid fraction speaks to patients who are "*eligible* for" Medicaid but "*not entitled* to benefits under Part A." According to Allina, these different terms must carry different meanings, yet the Secretary's focus on whether a patient meets Medicare's statutory criteria (versus looking to whether Medicare made payment on a particular day, as Allina proposes) blurs any potential distinction between the two. In so arguing, Allina relies on a line of appellate decisions concluding that the terms "eligible" and "entitled" have different meanings in the DSH adjustment formula. *See Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984, 988 (4th Cir. 1996); *Legacy Emanuel Hosp. & Health Ctr.*

15

*v. Shalala*, 97 F.3d 1261, 1265 (9th Cir. 1996); *Deaconess Health Servs. Corp. v. Shalala*, 83 F.3d 1041, 1041 (8th Cir. 1996); *Jewish Hosp., Inc. v. Sec'y of Health & Human Servs.*, 19 F.3d 270, 275 (6th Cir. 1994). Allina further stresses that some of those cases interpreted the phrase "entitled to benefits" to mean "that one possesses the right or title to that benefit," consistent with Allina's theory in this case. *Jewish Hosp.*, 19 F.3d at 275; *see also Legacy Emanuel Hosp.*, 97 F.3d at 1265 ("[T]he use of the broader word 'eligible' indicates a meaning different from 'entitlement,' which means the absolute right to . . . payment.") (internal quotation marks and citation omitted).

The Court finds this line of argument unpersuasive for several reasons. Most significantly, Allina's heavy reliance on the above-cited cases is unavailing because none of those decisions directly dealt with the precise issue before this Court—i.e., the phrase "entitled to benefits under Part A." Rather, all of those courts were called upon to interpret the other component of the Medicaid fraction's numerator—the requirement that patients be "eligible" for Medicaid. For this very reason, our Court of Appeals "declined to follow" those same cases, characterizing those courts' discussion of the phrase "entitled to benefits" as dicta. *Northeast Hosp.*, 657 F.3d at 12 n.7. This Court agrees with that assessment and follows the lead of our Circuit. Those decisions do not lend any meaningful support to Allina's arguments here. Moreover, the D.C. Circuit has rejected the substance of this "eligible" versus "entitled" argument as unpersuasive in any event, observing in *Northeast Hospital* that "the fact that the DSH factions speak of 'eligibility' for Medicaid but 'entitlement' to Medicare" was not "enlightening." *Id.* at 12. Instead, as the Circuit went on to state, "the Secretary's interpretation of 'entitled' as 'meeting the statutory criteria for entitlement' . . . does not actually collapse the terms." *Id.* (explaining that an individual could be "'eligible' for, but not 'entitled' to, Part A

benefits because one has not yet 'enrolled' in the program"). This Court concurs. The Secretary's reading of the statute at issue here does not equate these two terms, and Allina's insistence otherwise lacks merit.

*Fourth*, Allina argues that the Secretary's interpretation in this case amounts to impermissible retroactive rulemaking. The Court can dispense with this argument rather easily, since the D.C. Circuit recently rejected the same contention in *Catholic Health*. As Allina's argument goes, it was not until the above-referenced 2004 rulemaking "that the Secretary began applying her new policy retrospectively to exclude [dual-eligible days] from the Medicaid fraction for earlier years." (Dkt. No. 19 ("Pl.'s Opp'n") at 24). But our Court of Appeals held otherwise, explaining that the Secretary's "policy of excluding dual-eligible exhausted days from the Medicaid fraction was announced four years earlier in *Edgewater*, and the [2004] rulemaking was simply a reiteration of this position." *Catholic Health*, 718 F.3d at 921 (referencing *Edgewater Med. Ctr.*, HCFA Adm'r Dec., 2000 WL 1146601, *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 80,525 (June 19, 2000)). In view of this, the Circuit concluded that "[t]here is no doubt that the *Edgewater* adjudication set forth the interpretation that governs this case prior to the 2004 rulemaking, so the alleged retroactivity problem is not one of retroactive rulemaking." *Id.* at 922 (emphasis omitted). This holding resolves Allina's retroactivity arguments here.[9] Simply put, the Secretary's interpretation of the phrase "entitled to benefits under Part A" as used in the Medicaid fraction raises no problems of retroactive rulemaking.

---

[9] Somewhat relatedly, Allina points to two adjudications that, in its view, evince the Secretary's original policy of including "dual eligible exhausted days" in the numerator of the Medicaid fraction. *See Presbyterian Med. Ctr. of Phila. v. Aetna Life Ins. Co.*, HCFA Adm'r Dec., *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 45,032 (Nov. 29, 1996); *Jersey Shore Med. Ctr.*, PRRB Dec. No. 99-D4, *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 80,083 (Aug. 26, 1998). But in neither of those proceedings did the Secretary squarely consider, much less decide, the question at issue here. Instead, the CMS's Administrator's adjudication in

* * *

In sum, none of Allina's arguments establishes that the Secretary's reading of the relevant statutory language is impermissible or unreasonable. And given the wide deference due the Secretary in interpreting the complexities of the Medicare statute, the Court concludes that Allina's challenges under the APA are without merit.

## CONCLUSION

For the foregoing reasons, the Court concludes that Allina's Motion for Summary Judgment will be **DENIED** and that the Secretary's Cross-Motion for Summary Judgment will be **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

Date: October 8, 2013

ROBERT L. WILKINS
United States District Judge

---

*Presbyterian Medical Center* turned on the proper contours of Medicaid eligibility, rather than entitlement to Medicare Part A benefits, as relevant to this dispute. And as the Secretary rightly points out, the PRRB's determination in the *Jersey Shore* case was later vacated without any substantive discussion by the CMS Administrator on the interpretive question at issue. Thus, neither of those adjudications established the Secretary's interpretation of the phrase "entitled to benefits under [Medicare] Part A" as used in the Medicaid fraction of the DSH proxy formula.